## SAMPSON v MATTERN et

Ohio Appeals, 2nd Dist, Miami Co

No 340.   Decided Jan 29, 1935

Baird Broomhall, Troy, and Paul T. Klapp, Troy, for plaintiff in error.

O. J. Myers, Greenville, L. H. Mattern, Dayton, and L. E. Harvey, Troy, for defendants in error.

**OPINION**

By KUNKLE, J.

Counsel for plaintiff in error in their brief assign the following errors:

(1) The court erred in overruling motion of the guardian to dismiss the appeal from the Probate Court to the Common Pleas Court of Miami County, Ohio.

(2) The court erred in overruling the motion of respondent for finding in its favor at the close of appellants evidence and after all the evidence had been introduced.

(3) The decision and judgment of the court were manifestly against the weight of the evidence and contrary to law. The allowance made by the court is excessive. The court committed an abuse of discretion in making an allowance of fees for said applicants.

Counsel for plaintiff in error stress with much force in their brief the claim that the appeal from the Probate Court of Miami County to the Gommon Pleas Court of Miami County should have been dismissed before any evidence was taken. Such motion was promptly filed by plaintiff in error and in effect was renewed at the close of the testimony of defendants in error.

In short, counsel for plaintiff in error insist that the final entry in the Court of Common Pleas of Miami County in the case of Mildred Sampson v Alden Sampson, 2nd, together with the conditions and stipulations found in the trust deed for the two minor children define the jurisdiction of the Probate Court insofar as the trust funds of the said minors is concerned. Special stress is laid by counsel for plaintiff in error upon the terms and conditions found in paragraph (a) §1 of said deed of trust and also paragraphs (a) (b) of §2 of said trust. The claim of counsel for plaintiff in error is that no payments can be made out of the income or principal of said trust fund except as the Probate Court of Miami County directs. We have considered the very exhaustive briefs which have been filed by counsel upon the interesting question as to whether or not an appeal could be taken by the defendants in error from the finding and judgment of the Probate Court to the Court of Common Pleas. After a thorough review of the authorities cited in the briefs of counsel, we are of opinion that the Probate Court had jurisdiction of the subject matter; that the appeal was properly taken and that the Court of Common Pleas of Miami County had jurisdiction on appeal to hear and determine the case.

We cannot escape this conclusion after reviewing the case of **Trumpler, Admr. v Royer et, 95 Oh St, 194** and other authorities and sections of our Code. The syllabus of the Trumpler case is as follows:

"1. By the provisions of §8, **Article IV, Constitution and §10492, GC,** plenary jurisdiction is conferred on the Probate Court to grant and revoke letters testamentary and of administration, to direct and control the conduct, and settle the accounts of executors and administrators, and order the distribution of estates.

"2. The allowance of fees for services rendered by attorneys employed by an executor or administrator in the settlement of the estate in his hands is a matter to be determined by the Probate Court, and until so determined such fees do not constitute a valid claim against the estate.

"3. The amount of such fees may be included as an item in the settlement-account of the executor or administrator; or an application upon due and legal notice to all parties in interest may be made to the Probate Court to allow the claim and fix the amount thereof.

"4. Any person affected by order of the court with reference to any such item or application may, by the provisions of §11206, GC, appeal therefrom to the Court of Common Pleas."

Since the decision of the Supreme Court in the Trumpler case and before the submission of this controversy to the Probate Court of Miami County, §10492 GC was amended and is now §10501-53 GC and in addition to the provisions originally contained in said section, the following provisions are added:

"13. To direct and control the conduct of fiduciaries and settle their accounts.

"Such jurisdiction shall be exclusive in the Probate Court unless otherwise provided by law.

"The Probate Court shall have plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is expressly otherwise limited or denied by statute.".

As above suggested our examination of the authorities and the pertinent sections of our Code lead us to the conclusion that the Court of Common Pleas had jurisdiction of this subject matter on appeal from the Probate Court.

The next question urged relates to the allowance made defendants in error by the Common Pleas Court. The syllabus in the case of **Estate of Mary A. Oskamp, deceased, Volume 1, O.N.P. (N.S.) at page 197** is as follows:

"A reasonable allowance of fees will be made on equitable principals to counsel who, although not employed by the administrator or trustee have rendered services which inured for the benefit of the trust."

There is no dispute but that the services rendered by defendants in error were performed jointly for the benefit of Mrs. Sampson in reference to her claim against her former husband and also the claim of these minor children for support, maintenance and education against the estate of their father.

There can be little doubt but that the estate inherited by Alden Sampson, 2nd, was placed out of his hands in part, at least, for the purpose of avoiding complications arising out of his marriage to Mildred Sampson. There is no doubt but that the services rendered by defendants in

error were very valuable in that they secured for these minors a fund of $100,000 whereas the provisions made in the separation agreement between the parents was of value only if the same could be enforced. These services were rendered and expenses were incurred in going to the state of Massachusetts and elsewhere in searching the records and ascertaining the relevant facts, upon a contingent basis and at the expense of defendants in error in the event they were unsuccessful in securing favorable results.

The settlement secured for Mrs. Mildred Sampson was satisfactory to her and the defendants in error have been compensated for the services rendered Mrs. Sampson. It is true, as suggested by counsel for plaintiff in error, that these services were rendered by defendants in error before Mrs. Sampson was appointed as guardian. Had defendants in error been unsuccessful in securing a settlement or adjustment of the claim of these minors then, it would follow from their general contingent arrangement that no fee could be expected for such services.

The record discloses that the services rendered were of a very beneficial nature and terminated in securing, under all the circumstances, a very profitable settlement for these minors.

To review in detail the proceedings had and the services rendered by defendants in error would require a substantial repetition of the entire testimony of Lewis H. Mattern found on pages 5 to and inclusive of 60 of the record. It is impractical to attempt to quote this testimony and yet the entire testimony of Mr. Mattern relates to the services and the work performed by himself and his associates in this transaction. Among other things he says at page 40 of the record that:

"It was stated to Mrs. Sampson that insofar as their services were concerned as to her claim that the contract with her fixed those services and as far as doing anything for the children was concerned, we can't fix that with you, the court has to fix it. That matter was also discussed with Mrs. Sampson on the day the settlement was arrived at here in court. After the figure of the trust had finally been gotten up to $100,000 and the amounts fixed for Mrs. Sampson's settlement, Mr. Myers and myself talked with Mrs. Sampson for a considerable time here in the hall at the court house, and the statement was again

made that the fees were going to be fixed according to the contract which Mrs. Sampson had with Mr. Harvey and myself only 'on the amount of her settlement and that we were unable to tell her what the amount of the fee would be on the trust, that that was a matter which the court has to fix. We again talked to Mrs. Sampson in my office in Dayton when she came down there one afternoon at our request, about the time our application was to be filed in the Probate Court, and it was said to her at that time—it was pointed out to her what had been done for the children, how advantageous the settlement was for the children, that it was worth a good compensation, but that the amount of that did not lay with us to fix, but laid with the court. Those are three specific occasions upon which I recall having talked to Mrs. Sampson about that matter."

Mr. Mattern was the only defendant in error who testified in reference to the services and the conversations with Mrs. Sampson and others. But on page 93 of the record the following stipulation appears:

"Let the record further show that if Attorney O. J. Myers and Attorney L. E. Harvey, the other applicants in the matter on hearing, were called, that they would testify to the facts as testified to by L. H. Mattern, one of the applicants, and would substantiate the facts so testified to in each and every respect."

Mrs. Sampson states that she thought the amount she was paying defendants in error for representing her claim against the estate of Alden Sampson, 2nd, would compensate the defendants in error for all the services they rendered, that is, for the services not only rendered to her upon her individual claim but also for the services that they rendered for her minor children. We are required to find that the record does not support the understanding of Mrs. Sampson in this respect.

Counsel for plaintiff in error also claim that the amount allowed by the Court of Common Pleas is excessive.

Referring to the record upon this subject we find the testimony of R. N. Brumbaugh, pages 60 to 77 inclusive: W. S. McConnaughey, A. C. Link and Lawrence E. Layborne. The nature and extent of the services rendered by defendants in error are set forth in detail in a hypothetical ques-

tion and the minimum fee fixed by either of these attorneys was the amount for which judgment was rendered by the Court of Common Pleas. The record also on page 93 contains the following stipulation:

"Let the record show that Judge Kent W. Hughes, of Lima, ex-judge of the Court of Appeals, and who practiced law there for a number of years, Harry Bentley. of Lima, Ohio, Hugh Gilmore of Eaton, Ohio, T. A. Billingsley, of Greenville, Ohio, George Porter of Greenville, Ohio, Jesse K. Brumbaugh of Greenville, Ohio, Hugh Bingham of Sidney, Ohio, were to be called as witnesses, and at the time opposing counsel, Mr. Broomhall, agreed that each of them if called, would testify to the same facts that have already been testified to by the witnesses already called as to the value of the services rendered."

The above constitutes the record as to the value of the services rendered by defendants in error. Counsel for plaintiff in error offered no testimony upon this subject. We are asked to reverse the judgment of the lower court because the same is excessive and therefore against the manifest weight of the evidence. To do so we would be required to make a finding against the testimony of some ten well known attorneys with absolutely no evidence in the record to support a finding that the judgment is excessive. We have considered with care all the errors urged by counsel for plaintiff in error, but finding no error in the record which we think would warrant a reviewing court in disturbing the judgment of the lower court, the same will be affirmed.

HORNBECK, PJ, and BARNES, J, concur.