## LIMITATION OF CARRIER'S LIABILITY TO SIX MONTHS.

### Circuit Court of Richland County.

PAT GATTON v. THE UNITED STATES EXPRESS CO.

Decided, January 25, 1911.

*Carriers—Stipulation Limiting Liability to Six Months—Bar to an Action for Damages Suffered Through Fault of the Carrier, When—Contracts Will be Held to Have Been Executed With Full Knowledge, When—Release Must be Set Aside Before Action Can be Maintained.*

A shipper by express, who signs a contract which limits the liability of the company to six months in so far as the commencement of an action for damages is concerned, is barred from maintaining such an action begun more than six months after the shipment was made, notwithstanding his allegation that he signed the contract hurriedly, and without examining it, and supposing it was the bill of lading.

*Farber & Voegele,* for plaintiff in error.
*Cummings, McBride & Wolfe,* contra.

TAGGART, J.; VOORHEES, J., and POWELL, J., concur.

This case had its origin in the court of common pleas. Plaintiff in error was plaintiff therein and defendant in error was defendant therein. By his amended petition the plaintiff sought to recover, as he alleged, for a breach of a verbal agreement entered into between himself on the one part and the agent of the defendant company on the other part, for the transportation of thirty-eight horses and mules, in first class condition, from Bellville, Ohio, to Pittsburg, Pa., upon an agreed price. He avers that the defendant company violated its agreement to his injury in the sum of $630 which he sought to recover in his first cause of action. He avers substantially the same facts in respect to his second cause of action, and seeks to recover back the money that he was compelled to pay in his compliance with said contract, and which he was not entitled to pay in consequence of the failure of the company to perform its part of the agreement.

To the causes of action thus grounded in the petition, the defendant filed an answer admitting that it was an association or-

ganized under the laws of New York, admitting that it received certain horses and mules to be transported from Bellville, in the state of Ohio, to Pittsburg, in the state of Pennsylvania, and denying the remaining allegations in the amended petition. For its further defense to the claim of the plaintiff, it avers that the horses and mules were delivered to it under and by virtue of the terms of a written contract that was signed by the plaintiff and defendant, which contract contains certain provisions and stipulations set out in the answer, which purport to limit the liability of the defendant company, and limit the plaintiff in the commencement and prosecution of the suit after the expiration of six months. It is then averred in the answer that six months had elapsed before the filing of the suit by the plaintiff herein, and specifies the date of the contract and the date of the filing of the suit.

It is necessary to look somewhat closely to the reply and to the amendment to the reply that was filed by the plaintiff to this answer. In the reply that was filed on the 10th day of February, 1909, the plaintiff, in the early part of his reply, denies that the horses and mules were delivered to the defendant under and by virtue of a written contract, denies that there was any contract, written or otherwise, entered into by plaintiff and defendant containing the provisions set forth in defendant's answer, and plaintiff then sets out that the stock was shipped on the 24th of February, 1906, and admits that suit was not entered until the 15th day of December, 1906, and then seeks to excuse the delay in bringing the suit in consequence of defendant's representations that his (the plaintiff's) claim would be paid without suit, and such representations were continued up until near the expiration of said time, and these representations led to the delay in bringing the suit.

On motion filed by the defendant all the portion of the reply except such as constitutes the denial was stricken out by the court. Thereupon plaintiff filed an amendment to the reply, which was the issue tendered in the case. In the amendment to the reply, he admitted that after said horses and mules had been delivered by plaintiff to the defendant and the same had been loaded on board of the express car of the defendant and

accepted for shipment, the defendant by its duly authorized agent at Bellville presented to plaintiff a certain paper writing and requested the plaintiff to sign the same, representing that said paper writing was a bill of lading or receipt for his said horses and mules, which representations were false and known to be false, and no opportunity was given plaintiff to read the same or familiarize himself with the same; that the paper writing was not in fact what it was represented to be, and was in truth and in fact a contract with exemptions from liability and limitations in bringing the suit; that the plaintiff relied on the false representations and was thereby induced to sign the paper writing.

On the issues thus made up, the case proceeded to trial and, at the close of plaintiff's testimony, the court was asked by the defendant to direct a verdict for the defendant, which was overruled by the court; and at the close of all the evidence, the defendant renewed the motion to take the case from the jury and direct a verdict for the defendant. Thereupon the court instructed the jury to return a verdict for the defendant, which was accordingly done. A motion for new trial was filed and overruled and judgment rendered on the verdict.

It is contended by plaintiff in error that there were issues in this case that should have been submitted to the jury, and that the court was in error in directing a verdict for the defendant.

In the case of *Perry* v. *O'Neill Co.*, 78th O. S., page 200, the court use the following language in the syllabus of the case:

"A release of a cause of action for damages for personal injuries, that is void, is not a bar to such an action, and the plaintiff may, if it is set up by answer as a bar to his right of action, by reply aver the facts that make it void; but if it is not void but only voidable, he can not maintain his action until the release is set aside."

And the court in reviewing the authorities in this class of cases, quotes from the case of *Cassily* v. *Cassily*, 57th O. S., 528, where the court construes a written instrument signed by a mother and delivered to the son. The second syllabus is as follows:

"Where a mother and son enter into a written contract which is correctly read to her before execution and she then voluntarily executes it, she is bound by its terms until it is set aside by

a proceeding brought for that purpose. The facts, if satisfactorily established, that she could not read and write and, on account of the confidence reposed by her in her son, did not carefully weigh, so as to comprehend the terms of the instrument, when it was read to her, afford no ground to treat it as a nullity, or to permit her to contradict its terms by parol evidence, when interposed by the son as a defense to an action at law brought by her against him.''

Here the court lays down the rule, as we have indicated, that where the contract is not void but merely voidable, it must be set aside before the party can maintain an action in contradiction of its terms, and the court in the case of *Perry* v. *O'Neil & Co.* above, at the close of the opinion on page 226, quotes with approval the following:

'' A person who without reading it, signs a written contract releasing his right to maintain an action for damages resulting from injury caused by the negligence of his former employer, would be held to have executed the instrument with full knowledge of its contents, when his only excuse for not reading it was that he was 'somewhat hurried.' Such a contract can not be voided by the party signing it because he relies upon 'allusions to future employment' made by the agent of his former employer in the negotiations consummated by a written release, which employment was not furnished to him.'' 

So that the record in this case, while it indicates that there was some haste, we think it comes far short of showing that there was any active fraud, or any fraud, whereby the plaintiff was induced to enter into this contract. The contract therefore, being in full force and effect, was a complete bar, the stipulation of which was that unless suit was brought within six months, he would not be permitted to maintain his action. Contracts of this kind have received approval in the courts of this state and other states and are not contrary to public policy.

So that upon the undisputed facts in this case, as shown by the admissions in the pleadings and the testimony in the case, we think the court was right in directing a verdict in this case, and the judgment of the court of common pleas is affirmed with costs and remanded for execution. Exceptions may be noted.